IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARRY FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04CV751-MEF |
| | ) | [WO] |
| DOTHAN CITY SCHOOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on the defendant Dothan City Schools' ["Board"]

motion for summary judgment (Doc. # 42) of the plaintiff's claims of age and sex

discrimination brought pursuant to the Age Discrimination in Employment Act ["ADEA"],

29 U.S.C. §§ 621 *et seq.* (2004); Title VII of the Civil Rights Act of 1964, as amended ["Title

VII"], 42 U.S.C. §§ 2000e *et seq.*; the Fourteenth Amendment of the United States

Constitution through 42 U.S.C. § 1983 ["section 1983"]; and the Alabama Age

Discrimination in Employment Act ["AADEA"], ALA. CODE §§ 25-1-20 *et seq.* (2001 &

2004 supp.) (Doc. # 8). The plaintiff ["Farmer"] has responded,[1] and the court has carefully

---

[1]The Board filed its motion for summary judgment on 2 September 2005 (Doc. # 42), thus giving Farmer 21 days to file a response pursuant to the court's unambiguous briefing schedule (Doc. # 25). Prior to the response deadline, Farmer submitted several discovery motions, all of which the court denied and none of which extended his response deadline. Nevertheless, Farmer exceeded his deadline by one week.

Although the court is inclined to grant Farmer *some* latitude in consideration for his *pro se* status, the court's generosity is not limitless, and allowing his response to factor into the court's decision may well represent the figurative boundary beyond which the court chooses not to extend

reviewed the parties' submissions.  For the reasons discussed herein, the Magistrate Judge

recommends that the motion be granted.

## I.   FACTS AND PROCEDURAL HISTORY

### A.   *Farmer's History with Dothan City Schools*

Farmer first began teaching music to elementary school students attending Dothan

public schools in the fall of 1999, shortly after the start of the school year (Doc. # 1, p. 2;

Doc. # 43-3, Def's Ex. A, pp. 27-28).  Although Farmer holds a doctoral degree in "Musical

Arts (Organ)" from the University of Colorado (Doc. # 54-5, Pl's. Ex. 4, p. 2), during the

period of time relevant to this case, he did not hold the Alabama certification required to

teach in its public schools (Doc. # 54-1, pp. 3-6).  *See* ALA. CODE § 16-23-1.

Instead, he initially held a provisional and non-renewable emergency certificate,

which, though not formally issued until May 2000, allowed him to teach for the duration of

the 1999-2000 school year (Doc. # 43-6, Def's Ex. A-2, p. 2).  *See* ALA. CODE § 16-23-1. His

position required him to teach at three elementary schools, Grandview, Highlands and Girard

(Doc. # 43-3, Def's Ex. A., p. 28-29).

At the end of the school year, the Board informed Farmer that his position would not

be renewed.  *Id.*   Nevertheless, the next school year, the Board hired him for the same

---

that latitude.  Farmer is therefore cautioned not to allow his apparent unfamiliarity with the practice
of law lead him to stray from the well-worn path the court has cleared for the parties to follow in the
interest of judicial economy.  Future breaches of clearly established deadlines will not be tolerated.
*See* ***Wayne v. Jarvis***, 197 F.3d 1098, 1104 (11th Cir. 1999) (Referring to *pro se* filings, the court
noted that "[l]iberal construction does not mean liberal deadlines.").

position teaching at the same schools beginning in August.  *Id.* at 29-30.  This time, however, instead of an emergency certificate, the State issued Farmer a "First Alternative Baccalaureate" certificate, which is a provisional, temporary certificate that assists a recipient in his efforts to satisfy the State's teacher certification requirements.  ALA. CODE § 16-23-3. This certificate, issued in November, expired at the end of the 2000-2001 school year  (Doc. # 43-7, Def's Ex. A-3, p. 2).

Farmer again received a letter informing him that this position would not be renewed (Doc. # 43-3, Def's Ex. A., p. 30).  The following year, similar events occurred.  Farmer was hired again to teach at three elementary schools beginning in November of the 2001-2002 school year.  *Id.*  In January, however, he was assigned to three different elementary schools, Faine, Selma Street and Hidden Lake.  *Id.* at 30-31.  Furthermore, he taught under a different provisional certificate called a "First Special Alternative" certificate,[2] which was issued in February 2002 and expired at the end of the school year.  For the third time, the Board informed Farmer that the position would not be renewed.  *Id.* at 32.

In July 2002, Farmer applied for another music teaching position, though he still had not received State certification.  *Id.* at 37.  He interviewed for the position before a panel of three Board employees, Robin Bynum ["Bynum"], Lynne Summerford ["Summerford"] and Todd Weeks ["Weeks"], but he was not hired.[3]  *Id.* at 40.  The interviewers unanimously

---

[2]The distinctions between an Alternative Baccalaureate and the Special Alternative certificates are not relevant to this opinion.

[3]It is not clear whether Bynum was an interviewer or merely a facilitator.  Regardless of her role during the interview, evidence establishes that she offered an employment recommendation for

recommended Cheryl Hidle ["Hidle"], a younger female applicant who, according to an affidavit from Dell Goodwin, the personnel director for the Board, held "a valid professional teacher's certificate" (Docs. # 8, ¶ 24; 43-3, Def's Ex. A., p. 28-29; 43-19, Def's Ex. B, p. 4; 43-3).[4]  The Board selected Hidle for the position.[5]

_____

someone else (Doc. # 43-12).

[4]Farmer contends that Hidle did not possess the State certification.

> According to the Alabama State Department of Education's certification office, Ms. Hidle **did not** hold a valid teacher's certificate from ASDE at the time the July 2002 elementary music teacher position was filled.  Ms. Hidle's [sic] was issued a teachers [sic] certificate [sic] in 1991 that expired in 1999.  Ms. Hidle was issued an Emergency Certificate for the school year, 2000-2001 [sic] when she was employed by Dothan City Schools as a Choral Music Teacher at Honeysuckle Middle School.  Ms. Hidle was not issued a Professional Teacher Certification until October 29, 2003.

(Doc. # 54-1, pp. 6-7) (emphasis in original).

Farmer offers no insight into the basis for his knowing Hidle's certification status beyond the vague attribution to the State's teacher certification office, and he has neither pointed to nor provided any evidence contradicting Goodwin's sworn assertion.  Farmer's unsupported allegations are simply insufficient to create a genuine dispute.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (concluding that a plaintiff's "conclusory assertions" contradicting evidence in the record are, "in the absence of supporting evidence, . . . insufficient to withstand summary judgment") *quoted in Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1085 (M.D. Ala. 2003); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) ("Conclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden" of "showing that a genuine dispute on a material fact exists.").

[5]Goodwin's affidavit described the Board's hiring procedure.

> Positions are advertised and/or posted and applications are accepted.  Generally interviews with either the principal or supervisor involved are then scheduled for the candidates.  Sometimes more than one principal or supervisor participates in the interviews.  The candidates are normally ranked based on the interviews and the interviewer's thoughts about how well a particular candidate will meet the unique

The following year, Farmer applied for a music teaching position at Carver Magnet School (Doc. # 43-3, Def's Ex. A, p. 47-48).  He interviewed for the position with the school's principal, James Kelley ["Kelley"], as did Hidle, whose position from the previous year had been eliminated.  *Id.*  Kelley recommended Hidle, and the Board ultimately followed his recommendation.  *Id.* at 49.

During this time and continuing after his August 2003 interview, Farmer allegedly applied for numerous positions with the Board, including many teaching and support positions, with no success.[6]

He filed a charge with the Equal Employment Opportunity Commission ["EEOC"] on 22 August 2003 (Doc. # 30, p. 4), and the agency notified him of his right to sue on 10 May 2004.  Farmer filed this lawsuit on 6 August 2004.

---

needs and circumstances of the job . . ..  The interview(s) will normally make [sic] a recommendation to the Superintendent, and it is the Superintendent's prerogative to adopt this recommendation or not.  The Superintendent then makes a recommendation to the Board which votes to either accept or reject the recommendation.  This process takes place in open, public meetings and normally the Superintendent will make several recommendations to the Board at one time.

(Doc. # 43-19, Def's. Ex. B, pp. 3-4).

[6]In March 2004, Farmer was "called back to be a teaching assistant at Grandview Elementary" for most of the month  (Doc. # 43-3, Def's Ex. A, p. 32).

**B.**    ***Procedural Posture and Current Claims Against the Plaintiffs***

As is often the case with *pro se* plaintiffs, Farmer's pleadings indicate uncertainty

regarding which claims to bring and how to bring them.  Citing only to Title VII, his original

complaint asserted claims for discriminatory failure to hire and termination from employment

on the basis of age and sex  as well as wrongful retaliation (Doc. # 1 p. 1).[7]  He described the

allegedly discriminatory acts, which occurred "on or about July 29, 2002, February 24, 2003,

August 18, 2003[,]. . . March 9, 2004, July 19, 2004, [and] August 2, 2004," *id.* at 2, as

follows:

> Beginning in July of 2002, these Defendants have [sic]
> intentionally and unlawfully discriminated against the Plaintiff
> on the basis of his sex (gender) and age.  Specifically, the
> Defendants discriminated against the Plaintiff when they pre-
> selected a substantially less qualified and younger female
> employee for two music [teaching] positions in July 2002 and
> August 2003.  Defendants have discriminated against the
> Plaintiff with regards to hiring when they rejected his
> application via the continuation of an on-going [sic] alternative
> approach in obtaining a professional teaching certificate in the
> State of Alabama [sic].[8]  Plaintiff has been subject to retaliatory
> and unequal treatment in applying to [sic] an additional sixty
> (60+) support positions (non-certified) since October 2002,
> which all except for three have been filled by females, the
> majority not in the protected age category and with little or no
> teaching and/or educational experience.

(Doc. # 1, p. 3).

---

[7]Title VII does not address age discrimination. *See* 42 U.S.C. § 2000e *et seq.*

[8]This allegation is altogether unclear, and the court is not certain what Farmer meant by his allegation that the defendants "rejected his application *via* . . . an on-going alternative approach . . .."

A second "Corrected Complaint," which replaced a "Corrected Complaint," included citations to Title VII, the ADEA, the AADEA, section 1983 and 42 U.S.C. § 1981 (Doc. # 8-2, p. 1).  In his factual allegations, after describing aspects of his "twenty-six years of educational experience," Farmer focused solely on the circumstances of his February 2002 and August 2003 applications for teaching positions.  *Id.* at 4-5.

Nevertheless, he titled his first cause of action, "SEX (GENDER) DISCRIMINATION *AND RETALIATION* IN VIOLATION OF TITLE VII AND 42 USC § 1981."  *Id.* at 5 (emphasis supplied).  Beyond the obvious problem with the heading itself (i.e., section 1981 does not prohibit sex discrimination), the allegations in this section of his second corrected complaint are unsupported by facts that would establish a claim for retaliation.

Farmer concluded nonetheless that the "Defendant [sic] has retaliated against the Plaintiff for opposing sex and age discrimination in employment and for reporting sex and age discrimination in employment in violation of Title VII."  *Id.*  He then described his remaining causes of action for age discrimination under the ADEA and the AADEA, incorporating the allegations supposedly giving rise to a cause of action under Title VII and section 1981 and failing to reassert even any conclusory statement regarding retaliation.  *Id.* at 6.

In concluding, Farmer asked the court to grant declaratory and injunctive relief as well as compensatory (economic and non-economic) and punitive damages.

In a companion recommendation, the court has concluded that Farmer has failed to

allege race discrimination.  Therefore, section 1981 is inapplicable and his citation thereto erroneous.  42 U.S.C. § 1981 (2004) (prohibiting discrimination based on race); *see **Rutstein v. Avis Rent-A-Car Systems, Inc.***, 211 F.3d 1228, 1235 (11th Cir. 2002) (reciting the requirements for a claim under section 1981); ***Gorman v. Roberts***, 909 F. Supp. 1493, 1499 (M.D. Ala. 1995) ("[S]ection 1981 only applies to racial discrimination, not to discrimination based upon religion, national origin, or sex.").  Moreover, the court previously dismissed Farmer's Title VII claims against the individual defendants (Docs. # 33, 34).

The Board suggests that Farmer abandoned his retaliation claims by failing to reassert the relevant factual allegations in his second amended complaint (Doc. # 43-1, pp. 2-3). Recognizing the liberality with which the court is required to read Farmer's *pro se* pleadings, however, the court concludes that the factual allegations in his original complaint, which include Farmer's contention that he was not hired for numerous positions following his charge of discrimination, and the relevant conclusory assertion in his second amended complaint suffice to allege retaliation in violation of Title VII, the ADEA and the AADEA. FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."); *see*, *e.g.*, ***Bolden v. Odum***, 695 F.2d 549, 550 (11th Cir. 1983) ("If a *pro se* complainant meets jurisdictional requirements, we can extend such leniency as justice requires in construing the pleadings filed by such a litigant."); *see also **Wright v. Butts***, 953 F. Supp. 1352, 1356 n.2 (M.D. Ala. 1996).

Any doubts about Farmer's retaliation claims could have been resolved much earlier in this lawsuit with a motion to dismiss or, in the alternative, a motion for a more definite

8

statement.   FED. R. CIV. P. 12(b)(6), (e).   Furthermore, the Board's brief addresses the retaliation claims (Doc. # 43-1, pp. 39-45).   Therefore, allowing the claims to go forward for the purpose of summary judgment analysis best serves the interests of justice and will not prejudice the Board.

Farmer's section 1983 claims present a tougher question, and the defendants' opposing arguments, or lack thereof, have not facilitated the court's analysis of those claims. In their brief in support of their Motion for Judgment on the Pleadings, the individual defendants contended simply that Farmer's pleading of his section 1983 claims was "legally deficient" (Doc. # 36, p. 2).   They did not clarify for the court the legal grounds for this conclusory statement; instead, they argued only that his section 1983 claims against the individual defendants in their official capacity are redundant (Doc. # 36, p. 2).   The Board's 46-page brief in support of its summary judgment motion does not specifically address equal protection (Doc. # 43-1).

The defendants  - all of them -  ignore this court's duty to ensure fairness to *pro se* litigants and instead attempt to hold Farmer to the standard that applies to a person holding a law degree and a law license.   Farmer's trek into the analytical quagmire federal anti-discrimination laws may be risky, particularly when the statutes at issue provide for the award of attorney fees and costs, but it is his right to venture forth, and the law is clear that this court must provide him with some insulation from the strictness of pleading and other procedural requirements.   The court may not serve as Farmer's legal counsel, but it must at the very least, construe his pleadings broadly.   It appears that in this case, the defendants

9

have studied Farmer's pleadings with too narrow a focus.

Because analysis of equal protection claims based upon Section 1983 and challenging disparate treatment generally parallel Title VII claims, the court is satisfied that (1) read conjunctively, the pleadings provide sufficient notice to the defendants regarding Farmer's section 1983 claims, *inter alia*, and (2) if given the opportunity, Farmer could have amended his complaint to clarify his claims, including his retaliation claims.  His complaint has named the appropriate policy maker   - the Board and its members -   to assert a section 1983 claim against a government entity.  *See Quinn v. Monroe County*, 330 F.3d 1320, 1325-26 (11th Cir. 2003) (discussing the policymaker requirement).  Therefore, his section 1983 claims will be considered.

With this in mind, the court nevertheless finds that Farmer has abandoned any claims regarding the decision not to renew his position at the end of each of the school years during which he was employed with the Board.  Although his original complaint indicated that he was claiming discriminatory termination, he alleged no facts in that or any other pleading that support a termination claim.

Furthermore, and for the same reason, the court finds that he has abandoned any arguable claims of discriminatory hiring except for those regarding his July 2002 and August 2003 applications.[9]  *See*, *e.g.*, *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir.

---

[9]At his deposition, Farmer unambiguously evidenced his intent to limit his discriminatory hiring claims to these applications.

> Q      Okay.  I like to kind of categorize and organize things.
> Okay? So, in my mind, what you're saying is you've got

1997) ("The use of shotgun pleadings in civil cases is a ubiquitous problem. . . . Given the seriousness of that problem, it is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues before trial." (internal quotations and citations omitted) (*quoted in* **Chapman v. AI Transport**, 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc)).

Finally, in response to the Board's contention that "Farmer's claims cannot be read reasonably as 'disparate impact' claims" (Doc. # 43-1), Farmer argues merely that such claims are permissible and contends that his "proof of 'disparate impact' is the fact that Dothan City Schools continue the practice of employing individuals not with [sic] the protected age group, with little or no teaching experience and holding bachelor's degrees" (Doc. # 54-1, p. 11). While the court does not quibble with his uncontested legal argument that disparate impact claims are cognizable, that Farmer may now have evidence that the school's facially nondiscriminatory policies had a discriminatory impact does not address the Board's contention regarding his insufficient pleadings.

Key to the assertion of a disparate impact claim is, *inter alia*, an allegation and, for summary judgment purposes, evidence, that "there is a significant statistical disparity between the proportion of [members of a protected class] in the available labor pool and the

---

problems or complaints about two particular positions, one in July of 2002, and one in August of 2003?
A     (Farmer) Yes.
Q     Is that accurate?
A     Yes.

(Def's Ex. A, p. 36).

11

proportion of [members of the same protected class] hired." ***Cooper v. So. Co.***, 390 F.3d 695, 724 (11th Cir. 2004) (describing the elements of a disparate impact claim); *see also* 42 U.S.C. § 2000e-2(k) (establishing the burden of proof in disparate impact cases); ***E.E.O.C. v. Joe's Stone Crab, Inc.***, 220 F.3d 1263, 1273-83 (11th Cir. 2000) (analyzing a disparate impact claim); ***Sims v. Montgomery County Comm'n***, 766 F. Supp. 1052, 1100 (M.D. Ala. 1990) ("Adverse impact may be established by statistical evidence alone so long as the statistical pool–or sample, if appropriate–is logically related to the employment decision at issue and the method of comparison applied to that pool or sample is meaningful."). Although the relevant "labor pool" may vary from case to case, members of the labor pool must at least be qualified for the position(s) in question. ***Joe's Stone Crab, Inc.***, 220 F.3d at 1277 n.13 (noting that when a job requires special qualifications, general population figures are "troublesome").

In support of his alleged disparate impact claim, Farmer has provided self-prepared "surveys" indicating that the vast majority of teachers hired by the Board from October 1997 to October 2003 are females under the age of 50 (Docs. # 54-1, p. 12; 54-3). Similar to Farmer's statement regarding Hidle's qualifications,[10] these reports constitute nothing more than tabulated allegations unsupported by evidence in the record. More importantly, however, these surveys, which are not accompanied by evidence or information regarding the qualified labor pool during the relevant time period, are not statistically meaningful and therefore do not evidence discrimination.

---

[10] *See supra* note 4.

Therefore, the claims remaining for summary judgment analysis are as follows:

1.      Disparate treatment (failure to hire) and retaliation under Title VII;

2.      Disparate treatment (failure to hire) and retaliation under the ADEA and
        AADEA;

3.      Discrimination in violation of the Equal Protection Clause under Section 1983.


## II.    SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Green v. Pittsburgh Plate & Glass Co*., 224 F. Supp. 2d 1348, 1352 (N.D. Ala. 2002) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

"A judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 259. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

On a motion for summary judgment, the court is to construe the evidence and factual

inferences arising therefrom in the light most favorable to the nonmoving party.[11] ***Adickes***

***v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970); ***Mize v. Jefferson City Bd. of Educ.***, 93 F.3d

739, 742 (11th Cir. 1996).  Notwithstanding this advantage, a nonmoving plaintiff bears the

burden of coming forth with sufficient evidence on each element that must be proved.[12]

***Earley v. Champion Intern. Corp***., 907 F.2d 1077, 1080 (11th Cir. 1990); ***see Celotex***, 477

U.S. at 322-23.

---

[11]  The Supreme Court explained that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986) (citations omitted).

[12] In a Title VII claim based on circumstantial evidence, "if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the court must] grant summary judgment [for the defendant]." ***Earley***, 907 F.2d at 1080 (citations omitted). In ***Earley***, the Court of Appeals further emphasized:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;  there must be evidence on which the jury could reasonably find for the plaintiff." ***Anderson***, 477 U.S. at 252.
>                                        ***
> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249-50 (citations omitted) (emphasis added); *accord* ***Hudson v. Southern Ductile Casting Corp.***, 849 F.2d 1372, 1376 (11th Cir. 1988).

***Earley***, 907 F.2d at 1080-81.

When faced with a properly supported motion for summary judgment, a plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. Although the evidence need not be in a form necessary for admission at trial, *id.*, unsupported, self-serving allegations are insufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

## III.   DISCUSSION

### A.   *Section 1983*

The Board's failure to address specifically Farmer's 1983 claim does not preclude the court from ruling on that claim, because the analysis is identical to that of his other discrimination claims. "[W]hen section 1983 is used as a parallel remedy with Title VII in a . . . discrimination suit the elements of a cause of action are the same under both statutes, *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980)." *Lee v. Conecuh County Bd. of Ed.*, 634 F.2d 959, 962 (11th Cir. 1981); *see Busby v. City of Orlando*, 931 F.2d 764, 777-81 (11th Cir. 1991) (quoting *Lee* and analyzing section 1983 claims as Title VII claims); *Mack v. Ala. Dep't of Human Res.*, 201 F. Supp. 2d 1196, 1207-08 (M.D. Ala. 2002) (citing *Busby* and applying Title VII analysis to a section 1983 claim); *Moore v. State of Ala.*, 989 F. Supp. 1412, 1421 (M.D. Ala. 1997) (finding that the plaintiffs' failure to establish a prima facie case of discrimination or rebut the defendant's legitimate nondiscriminatory reason for the adverse action required summary judgment of a section

1983 discrimination claim); *see also **Bonner v. Prichard***, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Because Farmer's claims do not implicate a hiring policy designed to address past discrimination, which would in fact require a different analysis, analysis of Farmer's evidence regarding Title VII discrimination does not differ for his Section 1983 equal protection claims. In addition, as will become clear, his lack of evidence of discrimination, in general, is sufficient to award summary judgment on his equal protection claims.

**B.    *Title VII and the ADEA*[13]**

Title VII makes it unlawful for an employer to "fail or refuse to hire . . . any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Furthermore, employers are prohibited from discriminating against persons who have "opposed any practice made an unlawful employment practice . . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

Employers are similarly prohibited from discriminating against persons based on their

---

[13]ADEA analysis is identical to that of the AADEA, for which case law is lacking. ***Dooley v. Autonation USA Corp.***, 218 F. Supp. 2d 1270, 1277 (N.D. Ala. 2002); ***Bonham v. Regions Mortgage, Inc.***, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001). Therefore, to minimize confusion and maximize efficiency, the court henceforth shall refer only to the ADEA when discussing Farmer's age discrimination claims.

age or retaliating against persons for engaging in activities protected by the ADEA.  29

U.S.C. §§ 623(a), (d). This similarity has compelled the Eleventh Circuit Court of Appeals

to "apply legal standards developed in Title VII and ADEA cases interchangeably."

***Pennington v. City of Huntsville***, 261 F.3d 1262, 1269 (11th Cir. 2001) (citing ***Chapman***,

229 F.3d at 1024); *see also*, *e.g.*, ***Morrison v. Amway Corp.***, 323 F.3d 920 (11th Cir. 2003)

(intermingling Title VII and ADEA analysis); ***Kelliher v. Veneman***, 313 F.3d 1270 (11th Cir.

2002) (same).  Therefore, the court has combined its analysis of Farmer's discrimination

claims, including, as noted *supra*, his constitutional claims.

     A plaintiff may prove disparate treatment through the introduction of either direct or

circumstantial evidence.  *See*, *e.g.*,  ***Wilson v. B/E Aerospace, Inc.***, 376 F.3d 1079, 1085

(11th Cir. 2004).  Direct evidence is

> "evidence which reflects 'a discriminatory or retaliatory attitude
> correlating to the discrimination or retaliation complained of by
> the employee.'" ***Damon*** [***v. Fleming Supermarkets of Am.***],
> 196 F.3d [1354,] 1358 [(11th Cir. 1999)] (quoting ***Carter v.
> Three Springs Residential Treatment***, 132 F.3d 635, 641 (11th
> Cir. 1998)).  Direct evidence is "evidence, that, if believed,
> proves [the] existence of [a] fact without inference or
> presumption." ***Burrell v. Bd. of Trs. of Ga. Military Coll.***, 125
> F.3d 1390, 1393 (11th Cir. 1997).  As . . . precedent illustrates,
> "only the most blatant remarks, whose intent could mean
> nothing other than to discriminate on the basis of" some
> impermissible factor constitute direct evidence of
> discrimination. ***Rojas v. Florida***, 285 F.3d 1339, 1342 n.2 (11th
> Cir. 2002) (quoting ***Schoenfeld*** [***v. Babbitt***], 168 F.3d [1257,]
> 1266 [(11th Cir. 1999)] (citations and quotations omitted); *see*
> ***Carter v. City of Miami***, 870 F.2d 578, 582 (11th Cir. 1989).  If
> the alleged statement suggests, but does not prove, a
> discriminatory motive, then it is circumstantial evidence.  *See*
> ***Burrell***, 125 F.3d at 1393.

*Id.* at 1086.

In this case, an example of direct evidence would be a statement by the decision maker that Farmer was not hired because he is a man or is too old or because he filed a charge of discrimination or a lawsuit. *See Cooper*, 390 F.3d at 724 (providing a similar example in a race discrimination case); ***Damon***, 196 F.3d at 1359; ***Merritt v. Dillard Paper Co.***, 120 F.3d 1181, 1189-90 (11th Cir. 1997) (providing numerous examples of direct evidence as well as evidence not considered direct).

Despite what may have been his best efforts to conduct a pre-charge investigation, which included surreptitiously tape recording conversations between himself and persons allegedly involved with some of the hiring decisions at issue (Doc. # 43-3, Def's Ex. A, pp. 43-44, 50-51), Farmer failed to identify facts supporting the existence of direct evidence that he was the victim of age or sex discrimination when he was not hired in July 2002 and August 2003.[14]   Therefore, Farmer's claims must be analyzed according to the burden-shifting framework set forth in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792 (1973).

Consequently, to survive summary judgment, he must first present a *prima facie* case,

---

[14]Farmer's investigative attempts to ensnare interviewers by recording post-interview conversations may not have been entirely fruitless.  According to Farmer, Vernell Paul, who interviewed Farmer for a clerical aide position in June 2003 stated, "Parents would be up in arms if I hired a man." (Docs. # 43-3, Def's. Ex. A, p. 71; 54-1, p. 10).  This position, however, is not at issue in this case because Farmer failed to include it in his complaints, and the court denied Farmer's request to add this to his claim, noting the insufficiency of his proposed amendment, which  "merely stated the positions, the persons allegedly selected, and each person's gender and age" (Docs. # 31, 32).  Besides, Vernell Paul was not involved in the selections and termination which Farmer challenges, and there is no evidence that his point of view on the clerical aide position in June 2003 was shared by, or communicated to, any of the pertinent selecting officials in this case.  Therefore, the court need not decide whether Paul's comment constitutes direct evidence.

which generally means he must demonstrate that he was a qualified member of a protected class and was treated differently than similarly situated persons outside his protected class. *Wilson*, 376 F.3d at 1087.   Assuming he is successful, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory" or nonretaliatory reason for its alleged actions. *Id.*; *see also* ***Walker v. Elmore County Bd. of Educ.***, 379 F.3d 1249, 1252 (11th Cir. 2004) (summarizing the burden-shifting framework as applied to a claim of retaliation).

> If the defendant succeeds, the burden shifts back to Farmer

> > to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. [***Tex. Dep't of Comty. Affairs v.***] ***Burdine***, 450 U.S. [248,] 255-56 [(1981)].

> > If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. ***Chapman***, 229 F.3d at 1030.  Quarreling with that reason is not sufficient. *See id.*   The evidence may include, however, the same evidence offered initially to establish the prima facie case. ***Combs*** [***v. Plantation Patterns***], 206 F.3d [1519,] 1528 [(11th Cir. 1997)].

> > Despite the shifting of the burden of production between the plaintiff and the defendant under the ***McDonnell Douglas*** framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." ***Burdine***, 450 U.S. at 253.

*Wilson*, 376 F.3d at 1087-88.

1.      **Discriminatory Hiring**[15]

      *a.*    *Prima Facie Case*

In most disparate treatment cases involving a hiring decision, a plaintiff demonstrates

a *prima facie* case of discrimination by showing that

> (1) [he] was a member of a protected class; (2) [he] applied and
> was qualified for a position for which the employer was
> accepting applications; (3) despite [his] qualifications, [he] was
> not hired; and (4) the position remained open or was filled by
> another person outside of [his] protected class.

*Joe's Stone Crabs, Inc.*, 296 F.3d at 1273; *see also* *Chapman*, 229 F.3d at 1024 (reciting the

elements of a *prima facie* ADEA claim).

The Board contends that Farmer has failed to produce evidence that would give rise

to an inference of discrimination (Doc. # 43-1, pp. 31-35).  Specifically, the Board contends

that Farmer was not qualified for the teaching positions at issue because he did not hold a

professional teacher's certificate, though the Board does not challenge Farmer's evidence

---

[15]The Board contends that Farmer's claims regarding his July 2002 application are barred because he did not file his charge within 180 days of the alleged discriminatory action and, therefore, he failed to exhaust his administrative remedies.  *See* 29 U.S.C. § 626(d) (establishing the limitations period under the ADEA); 42 U.S.C. § 2000e-5(e) (establishing the limitations period under Title VII); *Byrd v. Dillard's, Inc.*, 892 So.2d 342 (Ala. 2004) (establishing the limitations period under the AADEA).  Resolution of this matter in favor of the Board would eliminate the relevant ADEA, Title VII, and AADEA claims but not Farmer's section 1983 claims.  *See Templeton v. Bessemer Water Svc.* **et al.**, No. 05-11596, 2005 WL3032330, at *1 n.1 (11th Cir. Nov. 14, 2005) ("The § 1983 race discrimination claim is not subjected to the Title VII exhaustion requirement." (citing *Thigpen v. Bibb County*, 223 F.3d 1231, 1237-39 (11th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Hines v. D'Atrois*, 531 F.2d 726, 736 (5th Cir. 1976))).  Conversely, resolution of his claims on the merits makes a finding regarding the timeliness of his charge unnecessary.  In the interest of judicial economy, the court declines to address the Board's exhaustion argument.

regarding the remaining *prima facie* elements (Doc. # 43-1, pp. 35-38).

It is true that when Farmer applied for the July 2002 and August 2003 positions, he did not have the requisite State certification, but it was also true when he applied for the positions for which the Board previously hired him. Each of the provisional certificates that allowed the Board to hire Farmer in the school years beginning in 1999, 2000 and 2001 were issued well after Farmer had begun teaching. Therefore, the question is not whether Farmer held a professional teacher's certificate when he applied for the positions but whether Farmer was qualified to receive additional provisional certificates that would allow him to teach without the permanent certification.

The Board does not address this issue specifically but does cite to several sections of the Alabama Code in support of its position generally: 16-23-1, 16-12-16, 16-23-3. Nothing in these statutes, however, would have preclude the state from issuing Farmer a non-emergency, provisional certificate. *See* ALA. CODE § 16-12-16 (2001 & 2004 Supp.) (requiring nominees for teaching positions to "hold certificates issued by the State Board of Education"); § 16-23-1 (requiring teachers to "hold *a* certificate issued by the State Superintendent of Education" (emphasis added)); *see generally* § 16-23-3 (establishing limited "provisional certificates"); *contrast* § 16-23-3(c) (limiting the duration of "any alternative certificate" for three years but not limiting the number of such certificates that can be issued) *with* § 16-23-3(e) (stating specifically that emergency certificates, upon expiration, "shall not be extended or renewed").

Thus, the Board lacks a legal basis for its argument that Farmer is not qualified, and

evidence before the court indicates that he was qualified (Docs. # 43-6, -7, -8; 54-1).  *See*

***Rosenfield v. Wellington Leisure Prods., Inc.***, 827 F.2d 1493, 1495 n.2 (11th Cir. 1987

("[I]n cases where a plaintiff has held a position for a significant period of time, qualification

for that position sufficient to satisfy the test of a *prima facie* case can be inferred.").

Therefore, for summary judgment purposes, Farmer was qualified for the position, and he

has demonstrated the other elements of a *prima facie* case.


> b.    *The Board's Legitimate Nondiscriminatory Reason*

Although the Board's brief does not specifically label its legitimate nondiscriminatory

reason for not hiring Farmer, it articulates and emphasizes two reasons throughout its brief:

(1) Farmer was not qualified for the position; and (2) Hidle was the most qualified candidate

because, in addition to possessing the academic qualifications and teaching experience

(which is no different from Farmer's), unlike Farmer, she possessed a professional teacher's

certificate at the time of her hiring, met the requirements to be considered "highly qualified"

under the No Child Left Behind Act, 20 U.S.C. § 7801(23) (2004) (defining "highly

qualified") ["NCLBA"], and performed better in her interviews for both positions (Docs. #

43-1, pp. 35-38; 43-19, p. 3).

For the reasons discussed in the context of Farmer's *prima facie* case, the Board's first

reason is not legitimate and alone would not satisfy even the minimal burden imposed upon

the Board at this stage.  In addition, the Court does not consider the subjective interview

results for the July 2002 application sufficient.  "A subjective reason is a legally sufficient,

legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1034.

Although the Board has presented evidence providing a factual basis supporting Summerford's reasons for preferring Hidle to Farmer (Doc. # 43-11, pp. 2-5), nothing in the record explains the scores given by the other two interviewers for the July 2002 position. Regarding the 2003 application, Kelley's notation that his recommendation was "[b]ased on the Gallop Teacher Perceiver interview, personal observation and personal references." (Doc. # 43-15, pp. 2) is itself too subjective and too vague to satisfy the Board's burden.

Setting aside reasons one and three, the assertion that Hidle was more qualified because she held the requisite teacher certification, as opposed to a provisional certificate, and met the federal criteria for being "highly qualified" is a legitimate, nondiscriminatory reason, and it is sufficient to carry the Board's burden, because it is supported by "a clear and reasonably specific factual basis". *Chapman*, 229 F.3d at 1030 (noting that the reason must be one that "might motivate a reasonable employer").

c.      *Pretext for Discrimination*

At this final stage of the burden-shifting analysis, Farmer must point to evidence in the record that would allow a reasonable fact finder to conclude that the reason proffered for the employment decision was pretext for discrimination. *Id.* 1024-25. Farmer has failed to do so.

Farmer offers no evidence to dispute the Board's view that Hidle was more qualified based on the objective reasons mentioned *supra*.  Instead, he simply argues that Hidle had not received her professional teacher certificate.  He additionally emphasizes the perceived age and sex disparities in the Board's hiring as reflected by the informal, non-empirical surveys he compiled.  Neither point requires further attention.

More than anything else, Farmer contends that he is more qualified based on his teaching experience and the fact that he has a Doctorate of Philosophy degree (Ph.D.) in music.  As evidence, he offers a copy of his and Hidle's resumes,[16] neither of which includes work history that significantly distinguishes one candidate from the other.

Farmer's resume indicates that he first taught as an elementary music teacher in the spring of 1969, prior to receiving either his master's or doctoral degrees.  He then taught at the college level for four years from 1971 to 1973, during which time he also was a "music consultant" for the Danville, Virginia, public school system, and from 1975 to 1977.  From 1977 to 1990, Farmer was the director of music for a church in Arkansas, and from 1991 to 1998, Farmer played the organ for two different Alabama churches.  Finally, he was an assistant English teacher in Japan for the 1998-1999 school year before being hired by the [Dothan City] Board beginning in the fall of 1999 (Doc. # 54-5).

According to Farmer's copy of Hidle's resume, she was a music minister for a church in Mississippi from 1994 to 1997.  During the same period, she spent one year teaching music at a church preschool and two years teaching children at a private elementary school.

---

[16]The Board has not challenged Farmer's introduction of the resumes.

From 1998 to 1999, she was vice president of, and taught for, a private music instruction school in Alabama.  For approximately nine months of that period, she also was a music minister for an Alabama church.  From 1997 to the date of Farmer's copy of her resume, which includes entries dated as late as 2002, she  served simultaneously as a music teacher assistant at one local church, a music minister at another, and as director of a singing group affiliated with Wallace Community College.  In addition, for the 2000-2001 school year, Hidle was the "choral director" for Honeysuckle Middle School in Dothan (Doc. # 54-5).

The only distinction of arguable substance is Farmer's advanced academic degree in music with a focus on the organ,[17] which, contrary to Farmer's apparent belief, does not necessarily qualify him, even theoretically, to teach music to Alabama's elementary school children.[18]  Certainly, Farmer's degree may evidence a superior knowledge of and familiarity with the organ and perhaps even organ music.  Indeed, the court does not intend to minimize Farmer's academic accomplishment, notwithstanding his apparent willingness to minimize the accomplishments of others who, because they have not earned a terminal degree, cannot aggrandize their abilities by referring to themselves as "Doctor."  Whatever else his Ph.D. may represent, it simply does not, standing alone, indicate a superior ability to teach elementary music to very young children.

For  disparate  qualifications  to  evidence  pretext  and  raise  an  inference  of

---

[17]Notably, both Farmer's bachelor's and master's degrees of music focus on "organ/church music" (Doc. # 54-5, p. 2), while Hidle's bachelor's degree is in "music *education*" (emphasis added) with a focus on "vocal choral, K-12" (Doc. # 54-4, p. 1).

[18]Nor does it necessarily qualify him for the other positions that he allegedly sought

discrimination, the difference, viewed in the proper context, must be significant  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1340 (11th Cir. 2000); *Deines v. Tex. Dep't of Protective & Regulatory Svc.*, 164 F.3d 277, 280 (5th Cir. 1999))).  The evidence before the court establishes no such difference between Farmer and Hidle.[19]  Therefore, Farmer has failed to point to evidence that would allow a reasonable fact finder to conclude that the Board did not view Hidle as more qualified or that Farmer was otherwise the victim of age or sex discrimination at any point during the hiring process.[20]  Summary judgment of his

---

[19]Farmer also notes that music teacher positions are not covered by the NCLBA, and, therefore, Hidle's satisfaction of the federal requirements for being "highly qualified" is not relevant. Moreover, Farmer contends that the State's requirement that recipients of provisional certificates, he among them, be "highly qualified" is evidence of pretext (Doc. # 54-1, pp. 15-16).  Neither argument has merit.

Farmer offers no evidence that the Board does not highly value a job candidate's meeting certain federal standards even though meeting those standards may not be required.  In addition, Farmer offers no legal authority for his latter contention and does not even suggest that the State's definition of "highly qualified" parallels the federal government's.

[20]Excerpts from Farmer's deposition are telling.  The following exchange concerns Farmer's July 2002 application.

Q     Now, do you have any evidence or information that supports
        your allegation, your contention, that you did not get this
        position because of your gender, your sex?
***
A     Yes.
Q     All right.  Tell me what that is?
A     Basically, the schools in question tend to hire females.
***
Q     Okay.  And how do you come by the conclusion that the
        schools in question tend to hire females?
A     Just from their hiring procedures and who they fill in their teaching positions.
Q     Okay. Is that all the evidence or information you have that supports this
        contention?
A     Well there was a personal political situation with Ms. Summerford, because
        she knew the applicant, Cheryl Hidle, as a parent of two children in her

discriminatory hiring claims is therefore due to be granted in favor of the defendants.

### 2.    Retaliation

Similarly to a disparate treatment claim, a retaliation claim may be proven with direct

or circumstantial evidence.  *See*, *e.g.*, ***Horne v. Russell County Comm'n***, 379 F. Supp. 2d

---

|      |      |
|------|------|
|      | school. |
| *** | |
| Q | Okay.  Any other evidence or information you have that supports this contention that you did not receive this position because of your sex, your gender? |
| A | Basically, it was the hiring, you know, pattern, the hiring process and pattern of the system. |
| Q | Okay.  Do you have any evidence or information that supports your contention or your allegation that you didn't get this position because of your age? |
| A | The individual that obtained the position was under 40. |
| Q | Okay.  Any other evidence or information? |
| A | No. |

(Doc. # 43-3, Def's Ex. A, p. 40-42).  A similar, though abbreviated, exchange occurred regarding the August 2003 position.

|      |      |
|------|------|
| Q | Okay.  What evidence or information do you have that supports your contention that you didn't get this position in August of 2003 because of your sex or gender? |
| A | Again, a female, under age, was hired for that position, and the same female. |
| Q | Okay.  Any other evidence or information that you have to support the allegation you didn't get this position because of your sex or gender? |
| A | No. |
| Q | Tell me what evidence or information you have that supports your allegation that you didn't get this position in August of 2003 because of your age? |
| A | The person that did get the position is not within the protected age [sic]. |
| Q | Any other evidence or information you have to support that contention? |
| A | No. |

1305, 1328-32 (M.D. Ala. 2005) (analyzing a Title VII retaliation claim).  Farmer has failed to identify direct evidence that any adverse employment actions, i.e., decisions not to hire him, were retaliatory.  Therefore, the court must analyze his retaliation claims in accordance with the **McDonnell Douglas** framework.  *Id.*; *see also* **Johnson v. Booker T. Washington Broad. Svc., Inc.**, 234 F.3d 501, 507 (11th Cir. 2000).

To demonstrate a *prima facie* case of retaliation, a plaintiff generally must offer evidence that "(1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is some causal relationship between the two events." **Johnson**, 234 F.3d at 507.

Characterizing Farmer's claim that he was retaliated against for each of the more than 100 positions for which he allegedly applied as a "shotgun" charge, the Board points to Farmer's deposition to illustrate his lack of any "meaningful, substantial or probative evidence showing retaliation" (Doc. # 43-1, p. 39-40).  The excerpt the Board quotes, which is accurate, reflects an acknowledgment from Farmer that his evidence of retaliation amounts to, *in toto*, "[s]imply the fact that I've applied for a number of positions, both certified and noncertified support positions, and have not been successful in any of those"  (Doc. # 43-1, p. 40; Def's Ex. A, pp. 65, 67).

Farmer's response to the Board's motion, in part, provides another example of the flawed logic that seems to be driving this lawsuit.

> When a highly qualified applicant, with years of experience and holding a terminal degree, applies to well over one hundred certified and non-certified positions, not be [sic] successful in

28

> obtaining a single one of these positions, then it is obvious that
> retaliation had to have played a part in this scenario.

(Doc. # 54-1, p. 19).   The court cannot agree.   Farmer's submissions indicate a complete

failure to grasp what is required to prove retaliation.[21]   His responsive brief is little more than

---

[21]Moreover, it is questionable whether Farmer understands the broader concept of retaliation. For example, evidence indicates that he is claiming retaliation for employment decisions made before he filed an EEOC charge or engaged in any other protected expression (Doc. # 30, pp. 4-5, 7), thus begging the question and leaving his analysis bereft of a critical constituent fact in support of his claim.

Buttressing the court's conclusion is that fact that Farmer also alleged retaliation for hiring decisions made *after* he informed his interviewer that he was not interested in the position.  In a letter to the EEOC, Farmer stated, "I was discriminated against (sex-gender, race and retaliation) on the above dates, in the following positions (35)."  (Doc. # 30, p. 17).  He then listed the schools and the positions.  *Id.* at 17-18.  Following this list, he stated, "On two of the Special Education positions, I have [sic] indicated that I was not interested in the position during the interview process after being informed of the requirements of the position" (Doc. # 30, p. 18).

Incredibly, his response to the motion for summary judgment goes even further to state that he was retaliated against with respect to positions for which he did not even apply!

> In numerous positions, certified and non-certified, I was never called
> to setup [sic] an interview after faxing to the personnel office
> requesting that my name be put on the vacancy list well before the
> posting deadline. One position that became vacant in September 2003
> was the Choral Music Teacher [sic] position at Northview High
> School.  I called to inquire about the position and was told by an
> Assistant Principal that the position was not going to be filled.  This
> position was advertised in January 2004.  I did not apply because I
> did not want to deal with the certification issue in the middle of the
> year after my experiences in the past with the school system.  So, the
> position was not filled for the entire school year, 2003-2004.  Instead,
> they filled the position with an extended substitute and did not
> advertise the position until April 23, 2004. . . .
>
> A similar occurrence occurred in August 2004, at Dothan High
> School involving a Choral Music Teacher position.  Again, the
> position was not advertised for five months after it became vacant.
> Instead they filled the position with an extended substitute until
> January 2005.  I had been approached by the Dothan High School

a narrative, stringing together conclusory statements, which leave the impression that Farmer expected the court to accept his unsworn, biased, and apparently skewed view of the circumstances.

His evidentiary submissions illustrate his incomprehension.  Accompanying his brief are (a) a letter he wrote to the EEOC investigator, (b) the meaningless surveys that the court has already discussed, (c) his and Hidle's resumes, and (d) recommendations for employment for the three years he worked for Dothan City Schools.  None of these serve his cause.

Importantly, Farmer has failed to point to (or even allege the existence of) any evidence indicating, *inter alia*,

- the identity of the person or persons who made the final decision regarding any of his applications other than the positions already discussed in the context of his disparate treatment claim; and

- that the person who made the final decision knew of his charge or of his

_____

principal about possibly coming in to replace the extended substitute around the middle of October 2004.  He made the statement that he wanted a trial period to see if or how I would work out.  <u>Of course this was not feasible since I was employed in a full time position, and I would only accept a permanent position with the school system</u>.

The defendant did not advertise and fill these positions because they knew that Farmer would probably be the only applicant, and they would have to possibly [sic] offer the positions to him.  The question of Farmer's qualifying status in obtaining tenure by being hired a fourth time would then have to be addressed.  These two instances and position vacancies constitute blatant retaliation against Farmer in this lawsuit against Dothan City Schools.

(Doc. # 54-1, p. 19).  The plaintiff's trail of complaints is inconsistent, and his conclusions are not supported by the facts.

lawsuit.[22]

These two points are fundamental to a retaliation claim, and without evidence of these matters, Farmer falls well short of demonstrating a *prima facie* case of retaliation. *See Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (upholding dismissal of claim of retaliation when the plaintiff "did not establish" that the alleged wrongdoers "had knowledge of her EEOC charge"); *Gupta v. Fla. Bd. of Regents, et al.*, 212 F.3d 571, 590 (11th Cir. 2000) ("To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' *and* 'that the protected activity and the adverse action were not wholly unrelated.'" (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)) (emphasis added)).  While Farmer may be convinced that the alleged retaliation is obvious, without the necessary evidentiary support, the court is powerless to

---

[22]Farmer notes only that

> [t]he Board of Education has been aware of Plaintiff's situation since the first fax was sent to them on August 1, 2002.  After not being re-instated [sic] for the Elementary Music Teaching [sic] position that I had filled since October 1999, fax were [sic] sent to Jim Hemby, Chairman, Board of Education on the following dates:  August 1, 2002; November 15, 2002, and February 25, 2003.  Administrators and board members have received numerous communications via fax, letters, and telephone calls over the past three years.  Board members were served with subpoenas in November 2004 as part of this lawsuit.

(Doc. # 54-1, p. 17).

Without evidence that they received Farmer's communications, his statements to that effect are speculative at best. More importantly, although proof that the members of the Board were served with subpoenas may suffice as evidence of knowledge, in the absence of evidence that they were the ultimate decision makers, Farmer has no grounds for accusing them of retaliation.

draw the same conclusion.

After exhaustively studying all of the submissions in this case and having found therein no evidence of discrimination or retaliation by any of the defendants, the court concludes that summary judgment should be granted against Farmer and in favor of all of the defendants on all of his remaining claims.[23]

---

[23]A final point regarding the evidence in this case, though alluded to in Farmer's deposition testimony quoted in footnote 19 *supra*, merits terminal emphasis. In his correspondence with the EEOC as well as his response to the Board's motion, Farmer made comments that belie his own asserted belief that, at least with respect to the July 2002 teaching position, he was the victim of discrimination, as opposed to some alternative motivation. He states in his letter to the EEOC,

> I strongly feel that my re-instatement [sic] in the elementary music teaching position (July 2002) was made for political and personal reasons . . .. The female in question had two children enrolled in one of the elementary schools of one of the principals that interviewed me on July 25, 2002.

(Doc. # 30, p. 14).

In his response to the Board's motion, Farmer states,

> Ms. Summerford had a personal and political agenda in favoring Ms. Hidle for the position (Farmer Dep. 41 line 11 through 24), and that purposely had an effect in the ranking of candidates and the overall attitude toward Farmer during the interview process. Ms. Hidle had two children enrolled in Ms. Summerford's school and knew Ms. Hidle on a personal basis.

(Doc. # 54-1, p. 5).

Farmer's statements suggest that he believes he was the victim not of discrimination but of favoritism, nepotism or cronyism. Considering Farmer's lack of evidence of age or sex discrimination, he may well be right. Those motivations, however unfair, are simply not actionable in federal court, however, and the courts have little tolerance for efforts to air personal grievances under the pretext of a discrimination claim.

## IV.    CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the Board's motion be GRANTED and that judgment be entered against the plaintiff on all remaining claims.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **25 January 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  ***Nettles v. Wainwright***, 677 F.2d 404 (5th Cir. 1982).  *See **Stein v. Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982).  *See also **Bonner v. City of Prichard***, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 11th day of January, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE